## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAWN MUSGRAVE     \*
185 Forest Avenue     \*
Unit 4A     \*
Palo Alto, CA  94301,     \*
    \*
     Plaintiff,     \*
    \*
    v.     \*
    \*
J. THOMAS MANGER     \*
Chief of Police, U.S. Capitol Police     \*
119 D Street, NE     \*
Washington, DC  20510,     \*
    \*
     and     \*
    \*     Civil Action No. 1:21-cv-02199
U.S. CAPITOL POLICE     \*
119 D Street, NE     \*
Washington, DC  20510,     \*
    \*
     and     \*
    \*     **COMPLAINT**
WILLIAM WALKER     \*
Sergeant at Arms     \*
U.S. House of Representatives     \*
H-124 Capitol     \*
Washington, DC  20515,     \*
    \*
     and     \*
    \*
OFFICE OF THE HOUSE SERGEANT     \*
AT ARMS     \*
U.S. House of Representatives     \*
H-124 Capitol     \*
Washington, DC  20515,     \*
    \*
     and     \*
    \*
SONCERIA BERRY     \*
Secretary of the Senate     \*
U.S. Senate     \*
S-312 Capitol     \*
Washington, DC  20510,     \*

```
                                          *
      and                                 *
                                          *
OFFICE OF THE SECRETARY OF THE            *
SENATE                                    *
U.S. Senate                               *
S-312 Capitol                             *
Washington, DC  20510,                    *
                                          *
      Defendants.                         *
                                          *
*     *     *     *     *     *     *     *     *     *     *     *     *     *
```

Plaintiff Shawn Musgrave brings this action against Defendants J. Thomas Manger, U.S.

Capitol Police, William Walker, the Office of the House Sergeant at Arms, Sonceria Berry, and

the Office of the Secretary of the Senate pursuant to the common law right of access to public

records, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the All Writs Act, 28

U.S.C. § 1651.

## JURISDICTION

1.      This Court has both subject matter jurisdiction over this action and personal

jurisdiction over Defendants pursuant to 28 U.S.C. §§ 1331 and 1361.

## VENUE

2.      Venue is appropriate under 28 U.S.C. § 1391.

## PARTIES

3.      Plaintiff Shawn Musgrave ("Musgrave") is a citizen of the United States and a

resident of the State of California. As a freelance reporter whose work has been featured in

*Politico*, the *Boston Globe*, the *Intercept*, and elsewhere, Musgrave is a representative of the

news media.

4.      Defendant J. Thomas Manger ("Manger") is the Chief of Police for the U.S. Capitol Police ("USCP") and is being sued in that capacity. Manger is in possession and/or control of records requested by Musgrave which are the subject of this action.

5.      Defendant USCP is the legislative branch law enforcement agency charged with protecting the U.S. Congress and its members, among other related responsibilities. The USCP is in possession and/or control of records requested by Musgrave which are the subject of this action.

6.      The USCP Office of the Inspector General ("USCP OIG") is a component of the USCP.

7.      Defendant William Walker ("Walker") is the current Sergeant at Arms ("SAA") of the U.S. House of Representatives ("House") and is being sued in that capacity. Walker is in possession and/or control of records requested by Musgrave which are the subject of this action.

8.      Defendant Office of the House SAA is the legislative branch office that assists the House SAA in the SAA's duties of being the chief law enforcement and protocol officer of the U.S. House of Representatives. The Office of the House SAA is in possession and/or control of records requested by Musgrave which are the subject of this action.

9.      Defendant Sonceria Berry ("Berry") is the current Secretary of the Senate, a legislative branch official within the U.S. Senate, and is being sued in that capacity. Berry is in possession and/or control of records requested by Musgrave which are the subject of this action.

10.      Defendant Office of the Secretary of the Senate is the legislative branch office in possession and/or control of records requested by Musgrave which are the subject of this action.

11.      The Office of Senate Security ("OSS"), a component of the Office of the Secretary of the Senate, is the legislative office charged with the protection and administration of

3

classified national security information, personnel, and related matters for the U.S. Senate and its committees and staff.

## BACKGROUND

### PART I: THE COMMON LAW RIGHT OF ACCESS TO PUBLIC RECORDS

12.     "In 'the courts of this country'—including the federal courts—the common law bestows upon the public a right of access to public records and documents." The Supreme Court "was unequivocal in stating that there is a federal common law right of access 'to inspect and copy public records and documents.'"

13.     All three branches of government are subject to this common law right, which "predates the Constitution itself" and is "fundamental to a democratic state."

14.     As Judge Karen LeCraft Henderson noted in her concurrence in *Judicial Watch, Inc. v. Schiff*, 998 F.3d 989 (D.C. Cir. 2021), this common law right of access to public records exists in some theoretical tension with constitutional provisions including the Speech or Debate Clause. Although Judge Henderson agreed that the right did not apply in that case because the Speech or Debate Clause outweighed Judicial Watch's right to access the records it sought, she noted that it is hardly clear that it would not apply to "the right case." According to Judge Henderson, the application of the common law right to access public records has long required "careful balancing," and *Judicial Watch* did not purport to preclude the right entirely.

15.     Indeed, Judge Henderson noted that the D.C. Circuit has "never considered the Speech or Debate Clause's application to a common law right of access claim and the parties [in *Judicial Watch*] simply cite a single district court case where the two doctrines were raised." Moreover, as Judge Henderson explained, in that case—*Pentagen Technologies International v. Committee on Appropriations of the United States House of Representatives*, 20 F. Supp. 2d 41

(D.D.C. 1998)—Judge Kessler decided that the investigative reports at issue were protected from disclosure by the Speech or Debate Clause "only *after* determining that the [reports] were 'not 'public records'" as that term was construed by this Circuit's controlling precedent. The Speech or Debate Clause clearly did not provide "absolute protection from disclosure—including protection from a common law right of access claim"—because if it had, Judge Henderson argued, "the district court's 'public records' analysis would have been unnecessary."

16.     Judge Henderson explained the proper framework for determining when this common law right of access applies. "First, a court must decide whether the document sought is a 'public record.'" If so, only then should the court "proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure."

17.     Judge Henderson then explained what constitutes a "public record" subject to this common law right of access: "a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." The subpoenas at issue in *Judicial Watch* were public records, Judge Henderson explained, but the Committee's interest in keeping the documents secret outweighed Judicial Watch's interest in public disclosure.

18.     "Nevertheless, the fundamental importance of the common law right of access to a democratic state . . . cautions against the categorical extension of Speech or Debate Clause immunity to the right." Judge Henderson explained that she only joined the judgment in that case because "Judicial Watch did not adequately present the argument resolving the Speech or Debate Clause and common law right of access doctrines *inter se.*"

19.     If a document is a "public record" under this framework, then, the Government's interest in keeping the document secret must be weighed against the public's interest in

disclosure, and the Speech or Debate Clause may not be categorically invoked to preclude any request for such a public record.

20.     After *Judicial Watch* was decided on 4 June 2021, Musgrave sent records requests under the common law right of access to public records to several legislative branch entities asking for records which meet the definition of "public records" under the relevant framework and for which there is significant public interest in disclosure. These records requests focused on the insurrection of 6 January 2021, the lack of USCP transparency surrounding the insurrection and more generally, and the lack of transparency from the House Sergeant at Arms and the Office of Senate Security on matters pertaining to Congressional treatment of sensitive information.

21.     The requested records are all public records under the relevant framework because they are "government document[s] created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived." Because the public interest in disclosure is high, Musgrave brings this action under the common law right of access to public records to compel their disclosure. The following sections provide further background on the 6 January insurrection and the lack of transparency from the USCP, the House SAA, and the OSS.

22.     Musgrave stipulates that portions of the requested records may not be appropriate for public release for a variety of reasons, but to date no Defendant claims to have performed any degree of segregability analysis. All Defendants appear to treat the requested records as simply "not subject" to the common law right of access, which is expressly foreclosed by the relevant jurisprudence.

## PART II: THE 6 JANUARY INSURRECTION

23.    On 6 January 2021, a violent mob stormed the United States Capitol with the broad intent of stopping Congress's counting and certification of electoral votes for the 2020 presidential election and thereby overturning the election in favor of former President Donald Trump.

24.    The insurrection was ultimately unsuccessful at overturning the election, but the attack on the Capitol saw hundreds of people illegally enter the halls of Congress and cause a substantial amount of violence, vandalism, and other chaos.

25.    In addition to the violence and vandalism, the events of 6 January have also been widely regarded as a broad security failure on several fronts. One of those fronts is the level of law enforcement presence and the number of reinforcements which were called—or not called—in a timely fashion by those with the power to do so.

26.    Another of those fronts is the national security interests implicated when rioters entered the Capitol complex and roamed freely for hours, largely without supervision and certainly without permission. "Members of Congress and their staff were evacuated so quickly that computers were left on with windows open and unlocked. Rioters took pictures of themselves sitting behind the desks of some of the most powerful people in our government. For the next 3 1/2 hours, the Capitol Police basically watched it happen." The USCP were "outnumbered and arguably had no way to exert any meaningful degree of control over the matter." "Hundreds of people, none of whom were searched, wandering the U.S. Capitol . . . with their smartphone cameras capturing every detail of the building, whether they're publicly accessible or not. Hundreds of people, none of whom were searched, with direct access to electronics, computers, and networks." The implications of the insurrection for congressional

security are nigh impossible to calculate given the circumstances: "It's a cybersecurity truism that if you have physical access to the machine, you own the machine. Applying that to computers with direct access to the congressional networks is terrifying."

### PART III: LACK OF TRANSPARENCY THEN AND NOW

27.     A troubling piece of the congressional-security puzzle is the consistent lack of transparency in almost every regard, both before and after the insurrection.

28.     For example, the former House SAA, former Senate SAA, and former USCP Chief gave conflicting stories to Congress about how they decided the National Guard should not be placed on standby. Most relevant to this case, the only way these stories came to light was because the officials were requested to testify in front of Congress, not because they had to justify their decision in any other way that would more regularly demonstrate accountability or inspire public confidence in the security of the Capitol.

29.     The lack of transparency and accurate communication regarding security that day has concerned even high-ranking congressional officials as well, because even they did not receive accurate information during an event that could have led to violence against the Members of Congress who were forced to barricade themselves inside the Capitol. For instance, Rep. Zoe Lofgren stated in an interview, "I was told by the police chief and the sergeant-at-arms that everything is under control and they had provided for every contingency," then added, "That turned out to be completely false."

30.     The three former officials cited above all resigned shortly after the events of 6 January. However, despite new leadership of congressional security entities across the board, there has been little to no improvement in their transparency, at least towards the public.

31.     The USCP, the House SAA, and the OSS are not subject to the Freedom of Information Act ("FOIA") because they are legislative branch entities, and FOIA does not apply to the legislative branch. The result of FOIA inapplicability, in combination with almost nothing requiring further transparency to the public from these offices, has roundly led to low transparency and high secrecy. This lack of transparency has become even more apparent in the face of increased public interest in congressional security in the wake of 6 January.

32.     However, these offices *are* subject to the common law right of access to public records, as all three branches of government are subject to that right. Musgrave therefore requested three categories of public records from these entities which are likely to help shine a light on how congressional security works and how it may be improved. The following is a brief explanation of each category, while the causes of action thereafter provide more detail about each specific set of records requested by Musgrave.

33.     The first category is comprised of particular records of USCP surveillance footage from 6 January.

34.     The second category is comprised of records about USCP transparency, because increased USCP transparency generally would have been helpful in preventing and/or understanding 6 January and is likely to be important in preventing similar attacks from happening in the future. The requests in this category deal with the House Committee on Appropriations's language in H.R. Rep. No. 116-447: first, encouraging the USCP to develop a "FOIA-like" process, and second, urging the USCP OIG to study and report which of the OIG's reports could have been made public.

35.     The third category is records about how Congress handles security, security clearances, and classified information. Physical security of the Capitol complex goes hand in

9

hand with security of classified information and the communication and control thereof. The House SAA, through its Office of House Security/House Security Division, maintains a House Security Policy Manual with security policies, procedures, standards, and other regulations and requirements governing the handling of national security information for House staff. The OSS maintains a Senate Security Manual that serves a similar function for the Senate. Neither of these manuals is available to the general public.

## CAUSES OF ACTION

### *PART I: USCP FOOTAGE FROM 6 JANUARY*

### FIRST CAUSE OF ACTION

### (MANGER/USCP – PUBLIC RECORDS DENIAL)

36.     Musgrave repeats and realleges the allegations contained in all paragraphs set forth above.

37.     On 7 June 2021, Musgrave submitted to the USCP a request for a copy of "all security camera footage shared by the USCP with the Federal Bureau of Investigation [("FBI")] as part of the investigation into the events of January 6, 2021." Musgrave knew that the USCP had entered an Information Sharing Agreement with FBI on 10 January 2021 under which FBI received access to USCP footage of 6 January but agreed that the footage remained in the legal control of the USCP "subject to any and all applicable release and non-disclosure requirements of Congress." *See* Scott MacFarlane (@MacFarlaneNews), Twitter (June 5, 2021, 10:58 AM), *at* https://twitter.com/MacFarlaneNews/status/1401191580191531018 (image of the agreement).

38.     Musgrave did not cite the "FOIA-like" process that the House Appropriations Committee has continued to instruct the USCP to develop, although it may be appropriate for his request to be processed under such a process, if it exists.

39.     On 9 June 2021, the USCP responded to Musgrave's request, "respectfully declin[ing] to provide" the requested footage because it "is not a 'public record' subject to the public right of access 'under the common law.'" It made this claim despite the fact that this surveillance video has been and continues to be relied upon to prosecute individuals involved in the 6 January insurrection.

40.     The USCP has not provided the requested records as of the filing of this lawsuit.

41.     Musgrave has a legal right under the common law right of access to public records to obtain these records because they are "public records" within the relevant framework and because the USCP's interest in keeping them secret is outweighed by the significant public interest in disclosure of the footage.

### PART II: USCP TRANSPARENCY

### SECOND CAUSE OF ACTION

### (MANGER/USCP – PUBLIC RECORDS DENIAL)

42.     Musgrave repeats and realleges the allegations contained in all paragraphs set forth above.

43.     On 23 June 2021, Musgrave submitted to the USCP a request for a copy of "all records about the 'policy and procedure for the sharing of information' that was requested by Congress in H.R. Rep. No. 116-447, at 22 (2020)."

44.     Musgrave did not cite the "FOIA-like" process that the House Appropriations Committee has continued to instruct the USCP to develop, although it may be appropriate for his request to be processed under such a process, if it exists.

45.     The same day, USCP responded by stating that the request was "not clear" and that USCP "do[es] not understand this request."

46.     On 25 June 2021, Musgrave provided clarification as follows: "The request states that we are requesting 'a copy of all records about the USCP "policy and procedure for the sharing of information" that was requested by Congress in H.R. Rep. No. 116-447, at 22 (2020).' That report, on page 22, states: 'USCP Information Sharing: While the USCP is not subject to the Freedom of Information Act (FOIA) (5 [U.S.C. §] 552), the Committee [on Appropriations] encourages the USCP to develop a policy and procedure for the sharing of information that follows the spirit of the Freedom of Information Act. This policy should be consistent with, and not interfere with, USCP's primary function of protecting the Congress.' Our request is therefore for any records about such a policy or procedure, or the development or discussion of one. If such a policy exists in any form, we are requesting a copy of the policy or procedure itself. If a draft policy or procedure exists, we are requesting a copy of the draft policy or procedure. If there have been only basic discussions of what such a policy or procedure might look like or whether to implement one at all, we are requesting copies of those discussions. If no policy or procedure exists—even a proposed one—and there have been no discussions about it, we would like an acknowledgment to that end. Keep in mind that the request is being made under the common law right of access to public records, as explained in the request, so the interest in public disclosure must be weighed against the USCP's interest in keeping these records secret. Given the subject matter of the requested records, that USCP is not subject to FOIA but was encouraged to develop an analogous process, and that recent events have directed substantial public attention to the current lack of USCP transparency, we believe the circumstances, under the relevant analysis, counsel strongly in favor of disclosure under this common law right of access. However, if you choose to deny this request for any reason, please state your reasoning for doing so."

47.     USCP has not provided the requested records as of the filing of this lawsuit.

48.     Musgrave has a legal right under the common law right of access to public records to obtain these records because they are "public records" within the relevant framework and because USCP has no legitimate interest in keeping them secret.

## THIRD CAUSE OF ACTION

## (MANGER/USCP OIG – PUBLIC RECORDS DENIAL)

49.     Musgrave repeats and realleges the allegations contained in all paragraphs set forth above.

50.     On 23 June 2021, Musgrave submitted to the USCP OIG a request for "a copy of the report that was requested by Congress in H.R. Rep. No. 116-447, at 22 (2020), discussing which USCP IG reports from the previous three years could have been made public."

51.     Musgrave did not cite the "FOIA-like" process that the House Appropriations Committee has continued to instruct the USCP to develop, although it may be appropriate for his request to be processed under such a process, if it exists.

52.     The USCP OIG has not responded or provided the requested reports as of the filing of this lawsuit.

53.     Musgrave has a legal right under the common law right of access to public records to obtain these records because they are "public records" within the relevant framework, and because the USCP has no legitimate interest in keeping them secret.

### PART III: CONGRESSIONAL SECURITY

### FOURTH CAUSE OF ACTION

### (WALKER/HOUSE SAA – PUBLIC RECORDS DENIAL)

54.     Musgrave repeats and realleges the allegations contained in all paragraphs set forth above.

55.     On 23 June 2021, Musgrave submitted to the House SAA a request for the most recent edition of the House Security Policy Manual.

56.     On 12 July 2021, the General Counsel of the House of Representatives responded to the request by asserting that the common law right of access does not apply to the Manual. This response letter stated that "the Constitution authorizes Congress to make its own determinations as to which of its materials shall be made available to the public." The letter then asserted that the Manual is a "permanent record of the House" and therefore disclosure would require a majority vote of the full House of Representatives. The letter also stated that the Manual "does not reflect any official government action or decision," but rather "merely provides advice, guidance, and direction to other decisionmakers regarding best practices related to the treatment of classified materials and other documents in the possession of House Committees and Member offices. As such, the Manual is . . . not a public record subject to the common law right of access."

57.     The House SAA has not provided the Manual as of the filing of this lawsuit.

58.     Musgrave has a legal right under the common law right of access to public records to obtain the Manual because it is a "public record" within the relevant framework, it does not implicate any Member or Committee's Speech or Debate Clause rights, and the House SAA's interest in keeping it secret does not outweigh public interest in disclosure.

## FIFTH CAUSE OF ACTION

## (BERRY/OSS – PUBLIC RECORDS DENIAL)

59.      Musgrave repeats and realleges the allegations contained in all paragraphs set forth above.

60.      On 25 June 2021, Musgrave submitted to the OSS a request for the most recent edition of the Senate Security Manual.

61.      On 17 August 2021, the Office of Senate Legal Counsel responded to the request by asserting "on behalf of the Secretary of the Senate" that the common law right of access does not apply to the Manual. This response letter stated that "[t]hat doctrine has never been applied to require public disclosure of records of the Senate." The letter then asserted that "[a]ccess to Senate records is governed by a complex set of rules, . . . not by the common law." The letter concluded, "Moreover, even if the common-law right applied and the Senate Security Manual were considered to be a public record as that doctrine defines such records, any public interest in disclosure would be outweighed by the significant national security interests implicated by its release."

62.      The OSS has not provided the Manual as of the filing of this lawsuit.

63.      Musgrave has a legal right under the common law right of access to public records to obtain the Manual because it is a "public record" within the relevant framework, it does not implicate any Member or Committee's Speech or Debate Clause rights, and the OSS's interest in keeping it secret does not outweigh public interest in disclosure.

## SIXTH CAUSE OF ACTION

## (WALKER/HOUSE SAA – PUBLIC RECORDS DENIAL)

64.     Musgrave repeats and realleges the allegations contained in all paragraphs set forth above.

65.     On 23 June 2021, Musgrave submitted to the House SAA a request for "a copy of the reports about legislative branch security clearances that your office prepared pursuant to H.R. Rep. No. 116-64, at 9 (2019) and H.R. Rep. No. 116-447, at 10 (2020)."

66.     On 12 July 2021, the General Counsel of the House of Representatives responded to the request by asserting that the common law right of access does not apply to the requested reports. This response letter stated that "the Constitution authorizes Congress to make its own determinations as to which of its materials shall be made available to the public." The letter then asserted that this request "should be directed to the House Committee on Appropriations, the proper custodian," rather than the House SAA. Further, the letter alleged that even if the House SAA were the appropriate custodian, the reports are "absolutely protected" by the Speech or Debate Clause. The letter also stated that the reports "themselves do not memorialize or record any official action taken by the Committee," so they are not public records subject to the common law right of access.

67.     The House SAA has not provided the requested reports as of the filing of this lawsuit.

68.     Musgrave has a legal right under the common law right of access to public records to obtain the reports because they are "public records" within the relevant framework, they do not necessarily implicate any Member's or Committee's Speech or Debate Clause rights,

and the House SAA's interest in keeping the reports secret does not outweigh public interest in their disclosure.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Shawn Musgrave prays that this Court:

(1)     Order Defendants Manger, Walker, and Berry, and their respectively led entities the USCP, House SAA, and Office of the Secretary of the Senate, to produce all requested records to him;

(2)     Declare that the common law right of access applies to the USCP, House SAA, and Office of the Secretary of the Senate, and direct those entities to develop standardized processes for the handling of such requests;

(3)     Order preliminary and permanent injunctive and/or declaratory relief as may be appropriate;

(4)     Award reasonable costs and attorneys' fees as provided in 28 U.S.C. § 2412(d) or any other applicable law;

(5)     Expedite this action in every way pursuant to 28 U.S.C. § 1657(a); and

(6)     Grant such other relief as the Court may deem just and proper.

Date:   August 18, 2021

Respectfully submitted,

/s/ Kelly B. McClanahan
Kelly B. McClanahan, Esq.
D.C. Bar #984704
National Security Counselors
4702 Levada Terrace
Rockville, MD 20853
301-728-5908
240-681-2189 fax
Kel@NationalSecurityLaw.org
*Counsel for Plaintiff*