## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SHAWN MUSGRAVE,

        Plaintiff,

  v.

J. THOMAS MANGER, in his official capacity
as Chief of the U.S. Capitol Police, *et al.*,

        Defendants.

Case No. 1:21-cv-02199-BAH

## MEMORANDUM IN SUPPORT OF DEFENDANTS J. THOMAS MANGER AND U.S. CAPITOL POLICE'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

I.      THE U.S. CAPITOL POLICE AND THE USCP INSPECTOR GENERAL .................... 2

    A.  The U.S. Capitol Police and its security camera footage ............................................. 2

    B.  The USCP Inspector General .................................................................................... 4

    C.  House Report No. 116-447 ....................................................................................... 4

II.     PLAINTIFF'S REQUESTS AND THIS LITIGATION ................................................. 5

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT .................................................................................................................. 7

I.      SOVEREIGN IMMUNITY BARS THIS ACTION AGAINST DEFENDANTS
      MANGER AND USCP ................................................................................................ 8

II.     PLAINTIFF'S CLAIMS LACK MERIT ..................................................................... 11

    A.  The USCP and OIG do not possess any responsive documents to the requests
        underlying Plaintiff's second and third causes of action ...................................... 12

    B.  The USCP's security camera footage is not a "public record" and the USCP's
        confidentiality interests in the footage outweigh any public interest .................. 13

        1.    The USCP's security camera footage shared with the FBI is not a "public
             record" to which Plaintiff's asserted common law right of access applies
             ................................................................................................................... 13

        2.    Even if it were a "public record," the USCP's interests in the
             confidentiality of the security camera footage outweigh any asserted
             public interest ...................................................................................... 16

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*ACLU of N. Cal. v. DOJ*,
No. C 04-447 PJH, 2005 WL 588354 (N.D. Cal. Mar. 11, 2005) ........................................... 17

*Alabama Rural Fire Ins. Co. v. Naylor*,
530 F.2d 1221 (5th Cir. 1976) ................................................................................................. 11

*Arpaio v. Obama*,
797 F.3d 11 (D.C. Cir. 2015) ..................................................................................................... 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................... 7

*Benvenuti v. Dep't of Def.*,
587 F. Supp. 348 (D.D.C. 1984) ............................................................................................... 10

*Block v. North Dakota*,
461 U.S. 273 (1983) .................................................................................................................... 8

*Buaiz v. United States*,
471 F. Supp. 2d 129 (D.D.C. 2007) .......................................................................................... 10

*Clopton v. Dep't of Navy*,
No. 95-5362, 1996 WL 680189 (D.C. Cir. Oct. 30, 1996) ......................................................... 9

*Cofield v. United States*,
64 F. Supp. 3d 206 (D.D.C. 2014) .............................................................................................. 8

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ................................................................................................................ 6, 7

*DeBrew v. Atwood*,
792 F.3d 118 (D.C. Cir. 2015) .................................................................................................. 12

*Dist. of Columbia v. United States*,
67 Fed. Cl. 292 (2005) .............................................................................................................. 2, 5

*Dugan v. Rank*,
372 U.S. 609 (1963) .................................................................................................................. 10

*Feldman v. Fed. Deposit Ins. Corp.*,
879 F.3d 347 (D.C. Cir. 2018) ................................................................................................... 7

*Fraternal Order of Police v. Library of Cong.*,
639 F. Supp. 2d 20 (D.D.C. 2009) ........................................................................................... 2, 5

*Higg-A-Rella, Inc. v. Cnty. of Essex*,
    660 A.2d 1163 (1995) ........................................................................................ 13

*Holt v. Davidson*,
    441 F. Supp. 2d 92 (D.D.C. 2006) ...................................................................... 9

*In re Leopold*,
    964 F.3d 1121 (D.C. Cir. 2020) ......................................................................... 16

*Islamic Am. Relief Agency v. Gonzales*,
    477 F.3d 728 (D.C. Cir. 2007) ............................................................................ 7

*Judicial Watch v. Schiff*,
    474 F. Supp. 3d 305 (D.D.C. 2020), *aff'd on other grounds* 998 F.3d 989 (D.C. Cir. 2021) .. 11

*Kissinger v. Reps. Comm. for Freedom of the Press*,
    445 U.S. 136 (1980) .......................................................................................... 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ............................................................................................ 6

*Lane v. Peña*,
    518 U.S. 187 (1996) ............................................................................................ 8

*Larson v. Domestic & Foreign Comm. Corp.*,
    337 U.S. 682 (1949) .......................................................................................... 10

*Liberation News Serv. v. Eastland*,
    426 F.2d 1379 (2d Cir.1970) ............................................................................... 9

*Locke v. Warren*,
    --- F. Supp. 3d ---, No. 19-61056-CIV, 2020 WL 2763890, at *3 (S.D. Fla. 2020) ................ 11

*McLean v. United States*,
    566 F.3d 391 (4th Cir. 2009), *abrogated on other grounds*, *Lomax v. Ortiz-Marquez*, 140 S.
    Ct. 1721 (2020) ................................................................................................... 8

*Metlife, Inc. v. Fin. Stability Oversight Council*,
    865 F.3d 661 (D.C. Cir. 2017) ........................................................................... 15

*Penland v. Mabus*,
    78 F. Supp. 3d 484 (D.D.C. 2015) ...................................................................... 9

*Pollack v. Hogan*,
    703 F.3d 117 (D.C. Cir. 2012) ........................................................................... 10

*Pro-Football, Inc. v. Harjo*,
    284 F. Supp. 2d 96 (D.D.C. 2003) ...................................................................... 7

iv

*Scinto v. Fed. Bureau of Prisons*,
  608 F. Supp. 2d 4 (D.D.C.), *aff'd*, 352 F. App'x 448 (D.C. Cir. 2009)................................ 9, 15

*Swan v. Clinton*,
  100 F.3d 973 (D.C. Cir. 1996) ...................................................................................... 9

*Trackwell v. United States Gov't*,
  472 F.3d 1242 (10th Cir. 2007) .................................................................................. 9

*United States v. Choi*,
  818 F. Supp. 2d 79 (D.D.C. 2011) .............................................................................. 9

*United States v. Mitchell*,
  463 U.S. 206 (1983) ..................................................................................................... 8

*Walton v. Fed. Bureau of Prisons*,
  533 F. Supp. 2d 107 (D.D.C. 2008) ........................................................................... 9

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
  17 F.3d 1446 (D.C. Cir. 1993) .................................................................................. 16

*Wash. Legal Found. v. U.S. Sentencing Comm'n*,
  89 F.3d 897 (D.C. Cir. 1996) ................................................................... 9, 11, 13, 14

**Statutes**

2 U.S.C. § 1901 ................................................................................................................ 2

2 U.S.C. § 1903(b)(2)(D) ................................................................................................ 4

2 U.S.C. § 1909 ................................................................................................................ 4

2 U.S.C. § 1961(a) .......................................................................................................... 2

2 U.S.C. § 1969(a) .......................................................................................................... 2

2 U.S.C. § 1979 ......................................................................................................... 3, 18

28 U.S.C. § 1331 ............................................................................................................. 9

28 U.S.C. § 1361 ............................................................................................................. 9

28 U.S.C. § 1651 ............................................................................................................. 9

28 U.S.C. § 2201 ............................................................................................................. 9

Pub. L. No. 108-7, 117 Stat. 11 (2003) .......................................................................... 2

Pub. L. No. 109-55, 119 Stat. 565 (2005) ...................................................................... 4

v

**Legislative Materials**

H.R. Rep. No. 116-447 (2020)................................................................................ 4, 5, 12

H.R. Rep. No. 117-80 (2021)..................................................................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................................. 6

Fed. R. Civ. P. 56................................................................................................. 6, 7

## INTRODUCTION

Plaintiff Shawn Musgrave, a freelance reporter, seeks from the U.S. Capitol Police (USCP) and J. Thomas Manger, the Chief of the Capitol Police, a variety of materials under an asserted common law right of access to public records.  His lawsuit seeks a court order requiring the USCP and its Office of the Inspector General to produce two categories of documents that a congressional committee requested the agency to prepare, and to produce all of the USCP's security camera footage that was shared with the Federal Bureau of Investigation as part of the investigation into the January 6, 2021 attack on the Capitol.

Plaintiff's Complaint should be dismissed on jurisdictional grounds because Congress has not waived Defendants' sovereign immunity from suit.  None of the various statutes Plaintiff relies upon for subject matter jurisdiction or his causes of action contains the requisite waiver of sovereign immunity to sue the federal government.  Plaintiff might attempt to rely upon the *Larson-Dugan* exception to sovereign immunity, which allows suits to proceed against federal officers where a plaintiff alleges them to have acted beyond statutory authority or unconstitutionally.  But Plaintiff has set forth no such allegation.  Instead, he relies solely on a legal right emanating from the common law, and which is therefore not a sufficient basis to invoke the *Larson-Dugan* exception.  The Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

In the alternative, Defendants Manger and USCP are entitled to summary judgment on the merits of Plaintiff's claims.  The USCP and the Office of the Inspector General have determined that the specific documents that Plaintiff requested do not exist, and there is plainly no right of access to material that does not exist.  Defendants are therefore entitled to summary judgment on Plaintiff's second and third causes of action.  As for Plaintiff's first cause of action—for a copy of all security footage the USCP shared with the FBI—that footage is not a "public record" to which

1

the common law right applies under the governing test in the D.C. Circuit.  It was not created or preserved to memorialize any official action but is rather routine surveillance footage created by the USCP's security camera system, albeit on an extraordinary day of events.  Even if the footage were a "public record," meanwhile, the USCP maintains strong interests in keeping that material confidential.  An order to disclose that material would, in effect, grant the public full visibility into the USCP's security camera system, including the capabilities, locations, and angles of all of the security cameras it deploys.  It could also undermine the integrity of the government's continuing investigation and prosecution of criminal activity on January 6.

## BACKGROUND

### I.   THE U.S. CAPITOL POLICE AND THE USCP INSPECTOR GENERAL

#### A.   The U.S. Capitol Police and its security camera footage

The U.S. Capitol Police is a law enforcement agency within the Legislative Branch.  *See Fraternal Order of Police v. Library of Cong.*, 639 F. Supp. 2d 20, 22 (D.D.C. 2009); *Dist. of Columbia v. United States*, 67 Fed. Cl. 292, 327 (2005).  It is charged with safeguarding the Congress and its Members, employees, and visitors, and congressional buildings and grounds from crime, disruption, and terrorism.  The mission of the USCP is to protect and secure Congress so it can fulfill its constitutional and legislative responsibilities in a safe, secure, and open environment.  Pursuant to statute, the USCP is headed by the Chief of the Capitol Police, and carries out its mission under the direction of the Capitol Police Board.  2 U.S.C. §§ 1901, 1961(a), 1969(a); *see Dist. of Columbia*, 67 Fed. Cl. at 326 ("The Capitol Police is an entity created by Congress and overseen by the Capitol Police Board, which consists of the Sergeant of Arms of the United States Senate, the Sergeant of Arms of the House of Representatives, and the Architect of the Capitol.").[1]

---

[1] Since 2003, the Chief of the Capitol Police has served on the Board in an *ex officio*, non-voting capacity.  *See* Pub. L. No. 108-7, div. H, § 1014(a)(2), 117 Stat. 11 (2003).

Additional oversight of the USCP is conducted by committees in both the House of Representatives and the Senate.

As part of safeguarding the Capitol, the USCP maintains an extensive system of security cameras both inside and outside the buildings on Capitol Grounds including the U.S. Capitol itself. *See* Declaration of James W. Joyce (Joyce Decl.) ¶ 9.  These cameras are part of the USCP's closed circuit video (CCV) system, which it relies upon to provide real-time information regarding any incident occurring on the Grounds.  *Id.*  The precise number of cameras in the CCV system is "security information" under 2 U.S.C. § 1979, and for that reason cannot be publicly disclosed.[2] *Id.* ¶ 17.  During the January 6, 2021 attack on the Capitol, the CCV system recorded a substantial portion of those events, which the USCP quickly understood would be essential to future investigations and potential prosecutions of criminal activity.  Joyce Decl. ¶ 6.  The USCP thus immediately preserved its security footage.  *Id.*

The USCP has since provided the FBI with over 12,000 hours of unedited footage from its CCV system to assist the government's investigation and prosecution of criminal cases arising out of the January 6 attack.  Joyce Decl. ¶¶ 6-7.  This footage covers the time periods from 12:00 p.m. to 8:00 p.m. on January 6, and from 6:00 p.m. to 10:00 p.m. on January 5, 2021.  *Id.*  A January 10, 2021 agreement between the USCP and the FBI places restrictions on the FBI's use of the

---

[2] Section 1979(b) provides, in pertinent part:

Notwithstanding any other provision of law, any security information in the possession of the Capitol Police may be released by the Capitol Police to another entity, including an individual, only if the Capitol Police Board determines in consultation with other appropriate law enforcement officials, experts in security preparedness, and appropriate committees of Congress, that the release of the security information will not compromise the security and safety of the Capitol buildings and grounds or any individual whose protection and safety is under the jurisdiction of the Capitol Police.

2 U.S.C. § 1979(b).

USCP's footage.  *Id.* ¶ 8 & Ex. F.   Under the agreement, the shared footage is to remain the property of and under the legal control of the USCP, and is to be returned to the USCP at the conclusion of the FBI's investigation.  *Id.* ¶ 8 & Ex. F.  These restrictions do not apply to footage if it is used as evidence or discovery as part of any criminal prosecution.  *Id.* ¶ 8 & Ex. F.

### B.    The USCP Inspector General

Established by Congress in 2005, the USCP Inspector General (IG) and Office of Inspector General (OIG) work to promote economy, efficiency, and effectiveness in the administration of USCP programs and operations; and to prevent and detect fraud, waste, abuse, and mismanagement in USCP programs and operations.  *See* 2 U.S.C. § 1909; Pub. L. No. 109-55, tit. I, § 1004, 119 Stat. 565 (2005).  The IG is appointed and supervised by the Capitol Police Board. 2 U.S.C. § 1909(b)(1).  Among other things, Congress generally authorized the IG to exercise the same authority as an inspector general does under the Inspector General Act of 1978 (IG Act), 5 U.S.C. App., and authorized the IG to investigate complaints of mismanagement or abuses of authority by the USCP.  *See* 2 U.S.C. §§ 1909(c), (d)(1).  Congress further directed the IG to prepare a variety of reports on its activities, including audit reports, inspection reports, financial statement reports, and semiannual reports (which summarize all OIG activities for the prior six-month period).  *See* 2 U.S.C. §§ 1903(b)(2)(D), 1909(c)(2), 1909(d)(1).  While Congress has generally required inspectors general of executive agencies to make their reports available to the public, it has not imposed an equivalent requirement on the USCP IG.

### C.    House Report No. 116-447

On July 14, 2020, the House Committee on Appropriations issued a report to accompany the Legislative Branch appropriations bill for the fiscal year ending September 30, 2021.  *See* H.R. Rep. No. 116-447 (House Report).  The House Report included two passages relevant to Plaintiff's requests in this case.  First, the Committee acknowledged that "the public does not have access to

4

reports issued by the Capitol Police Office of Inspector General" and that "these reports can be sensitive to law enforcement actions and Congressional security," and then stated that "no later than 90 days after the enactment of this Act, the Inspector General is directed to conduct a review of all issued reports within the previous 3 years and provide to the Committees a report listing which reports could have been made public." *Id.* at 22. Second, the Committee stated:

> While the USCP is not subject to the Freedom of Information Act (FOIA) (5 USC 552), the Committee encourages the USCP to develop a policy and procedure for the sharing of information that follows the spirit of the Freedom of Information Act. This policy should be consistent with, and not interfere with, USCP's primary function of protecting the Congress.

*Id.*; *see also* H.R. Rep. No. 117-80, at 26 (2021) (Committee Report accompanying most recent Legislative Branch appropriations bill containing similar passages).

## II.   PLAINTIFF'S REQUESTS AND THIS LITIGATION

Plaintiff alleges that he submitted three requests asserting a common law right of access to public records to the USCP and OIG, which are the subject of this litigation. By letter dated June 7, 2021, Plaintiff requested of the USCP "a copy of all security camera footage shared by the USCP with the Federal Bureau of Investigation as part of the investigation into the events of 6 January 2021." Joyce Decl. ¶ 3 & Ex. B. By letter dated June 23, 2021, Plaintiff requested of the USCP "a copy of all records about the 'policy and procedure for the sharing of information' that was requested by Congress in H.R. Rep. No. 116-447, at 22 (2020)." Joyce Decl. ¶ 4 & Ex. D. Finally, Plaintiff alleges that by separate letter also dated June 23, 2021, Plaintiff requested of OIG "a copy of the report that was requested by Congress in H.R. Rep. No. 116-447, at 22 (2020)." Compl. ¶ 50.

On June 9, 2021, the USCP responded to Plaintiff's request for security camera footage. The USCP declined to provide the requested footage, noting that it was not a "public record"

subject to the common law right of access.  Joyce Decl. ¶ 3 & Ex. C.  On October 21, 2021, the

USCP responded to Plaintiff's request for documents about the information-sharing policy

requested by Congress and informed Plaintiff that no such documents exist.  *Id.* ¶ 4 & Ex. E.  On

October 20, 2021, OIG sent a letter to Plaintiff noting that it had no record of having received the

request described in paragraph 50 of the Complaint, but nonetheless responded that the report

requested in the House Report does not exist.  *See* Declaration of Michael Bolton (Bolton Decl.)

¶¶ 5-6 & Ex. A.

On August 18, 2021, Plaintiff filed a complaint against USCP Chief Manger, in his official

capacity, and the USCP, asserting three causes of action based on Plaintiff's three requests.  ECF

No. 1, Compl.  For each cause of action, Plaintiff relies on an asserted common law right of access

to public records.  Compl. ¶¶ 41, 48, 53.[3]  Plaintiff requests that the Court, among other things,

order Defendants Manger and USCP to provide the requested materials, and declare that the

common law right of access applies to the USCP.  Compl., Prayer for Relief at 17.

## LEGAL STANDARD

Defendants Manger and USCP move for dismissal under Fed. R. Civ. P. 12(b)(1) for lack

of subject matter jurisdiction or, in the alternative, for summary judgment under Fed. R. Civ. P.

56.  In reviewing a motion to dismiss under Rule 12(b)(1), a court is guided by the principle that

"[f]ederal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 377 (1994). Thus, a federal court must presume that it "lack[s] jurisdiction unless

the contrary appears affirmatively from the record."  *DaimlerChrysler Corp. v. Cuno*, 547 U.S.

332, 342 n.3 (2006) (citation omitted).  The burden of demonstrating the contrary rests upon "the

---

[3] Plaintiff asserts similar claims, although for different documents, against the House Sergeant at Arms and his Office, Compl. ¶¶ 54-58, 64-68, and the Secretary of the Senate and her Office, *id.* ¶¶ 59-63.  Those Defendants are filing their own responses to the Complaint.

6

party asserting federal jurisdiction." *Id.*   When considering jurisdiction based on the face of a plaintiff's complaint, a court must accept "well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).   However, the court need not assume the truth of "legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), nor "accept inferences that are unsupported by the facts set out in the complaint," *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 732 (D.C. Cir. 2007).   "Where a motion to dismiss a complaint presents a dispute over the factual basis of the court's subject matter jurisdiction . . . . the court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss." *Feldman v. Fed. Deposit Ins. Corp.*, 879 F.3d 347, 351 (D.C. Cir. 2018) (citation omitted).

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   "Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment." *Pro-Football, Inc. v. Harjo*, 284 F. Supp. 2d 96, 112 (D.D.C. 2003).   Rather, the dispute must concern a question of fact that is material, meaning that it is "capable of affecting the substantive outcome of the litigation." *Id.*   The dispute must also be genuine, meaning that it is "supported by sufficiently admissible evidence such that a reasonable trier-of-fact could find for the nonmoving party." *Id.*

## ARGUMENT

The claims against Defendants Manger and USCP should be dismissed because Congress has not waived Chief Manger and the USCP's sovereign immunity from suit, which is fundamental to establishing jurisdiction in any suit against the federal government.   Insofar as Plaintiff may contend that this action falls within the *Larson-Dugan* exception to sovereign immunity, he is

incorrect.  Plaintiff alleges no more than the invasion of a common law right, and not conduct in excess of statutory or constitutional authority, as the *Larson-Dugan* exception demands.  In the alternative, if the Court concludes that sovereign immunity does not bar this suit, Defendants are nonetheless entitled to summary judgment because Plaintiff's claims fail on the merits.  For the second and third of Plaintiff's causes of action, the documents requested of the USCP and OIG do not exist.  Meanwhile, Plaintiff's claim to access all USCP security footage shared with the FBI as part of its January 6 investigation fails because that footage is not a "public record" cognizable under the asserted common law right.  And even it were a "public record," the USCP's interests in confidentiality outweigh any public interest in that footage.

## I.   SOVEREIGN IMMUNITY BARS THIS ACTION AGAINST DEFENDANTS MANGER AND USCP

"The basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress."  *Block v. North Dakota*, 461 U.S. 273, 287 (1983); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  That immunity "extends to the United States Congress when it is sued as a branch of the government."  *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009), *abrogated on other grounds*, *Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020), and encompasses agencies within the Legislative Branch, *see Cofield v. United States*, 64 F. Supp. 3d 206, 213-14 (D.D.C. 2014) ("[S]overeign immunity bars any claim for money damages against the United States (including the U.S. Senate) and its agencies.").

Accordingly, to proceed with this suit, Plaintiff must identify a waiver of sovereign immunity that is "unequivocally expressed in statutory text."  *Lane v. Peña*, 518 U.S. 187, 192 (1996) (a waiver of sovereign immunity "will not be implied").  Yet Plaintiff has identified no

such unequivocal waiver that would permit this action.  Plaintiff's assertion of jurisdiction based on 28 U.S.C. § 1331, *see* Compl. ¶ 1, is insufficient, since the D.C. Circuit has held that this statute does not "by itself waive[] sovereign immunity."  *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996); *Clopton v. Dep't of Navy*, No. 95-5362, 1996 WL 680189, at *1 (D.C. Cir. Oct. 30, 1996) ("[Section 1331] does not provide a separate waiver of sovereign immunity for suits against the government."); *Penland v. Mabus*, 78 F. Supp. 3d 484, 491-92 (D.D.C. 2015) ("It is clear that the grant of federal question jurisdiction in 28 U.S.C. § 1331 does not by itself waive sovereign immunity." (citation omitted)).  Nor can Plaintiff rely on his claim to mandamus jurisdiction under 28 U.S.C. § 1361 as a waiver of sovereign immunity, *see* Compl. ¶ 1.  "It is well settled that [section 1361] does not by itself waive sovereign immunity."  *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 901 (D.C. Cir. 1996) (*WLF II*).  In any event, section 1361 "is only a source of jurisdiction for district courts to exercise writs of mandamus to employees of the *Executive* branch."  *United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011) (citing *Trackwell v. United States Gov't,* 472 F.3d 1242, 1247 (10th Cir. 2007); *Liberation News Serv. v. Eastland,* 426 F.2d 1379, 1384 (2d Cir.1970) ("[I]n enacting [ ] § 1361 . . . Congress was thinking solely in terms of the executive branch.") (Friendly, J.))).

The same is true insofar as Plaintiff might argue a waiver can be traced to either of a pair of statutes he cites in the Complaint—the Declaratory Judgment Act, 28 U.S.C. § 2201, or the All Writs Act, 28 U.S.C. § 1651.  *See* Compl. at 1.  As multiple courts have held, "the Declaratory Judgment Act does not waive the federal government's sovereign immunity."  *Scinto v. Fed. Bureau of Prisons*, 608 F. Supp. 2d 4, 9 n.2 (D.D.C.), *aff'd,* 352 F. App'x 448 (D.C. Cir. 2009); *Walton v. Fed. Bureau of Prisons*, 533 F. Supp. 2d 107, 114 (D.D.C. 2008).  Courts have also long held that the All Writs Act likewise does not contain a sovereign immunity waiver.  *See, e.g.*, *Holt v. Davidson*, 441 F. Supp. 2d 92, 96 (D.D.C. 2006) ("Section 1651, however, does not operate as

9

a waiver of sovereign immunity."); *Buaiz v. United States*, 471 F. Supp. 2d 129, 138 (D.D.C. 2007); *Benvenuti v. Dep't of Def.*, 587 F. Supp. 348, 352 (D.D.C. 1984).

Unable to identify any unequivocal congressional waiver of sovereign immunity, Plaintiff may argue that the *Larson-Dugan* exception to sovereign immunity applies. "Under this exception, 'suits for specific relief against officers of the sovereign' allegedly acting 'beyond statutory authority or unconstitutionally' are not barred by sovereign immunity." *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (quoting *Larson v. Domestic & Foreign Comm. Corp.*, 337 U.S. 682, 689 (1949)); *see also Dugan v. Rank*, 372 U.S. 609, 621-22 (1963). But Plaintiff has not alleged that Defendant Manger—or any other USCP officer for that matter—is acting "beyond statutory authority or unconstitutionally."

Rather, Plaintiff asserts only that Defendants Manger and USCP have violated Plaintiff's alleged common law right of access to public records. In *Larson* itself, the Supreme Court rejected a common law claim as a basis for the *Larson-Dugan* exception to sovereign immunity. After allowing that a suit alleging action by a government officer beyond statutory authority or unconstitutional action by that officer would fall within the exception to sovereign immunity, the *Larson* Court considered a "third category of cases"—those alleging that a government officer's action was "'illegal' as a matter of general law, whether or not it be within his delegated powers." 337 U.S. at 692. The Court rejected as "erroneous" the plaintiff's theory that such suits also fall within this exception to sovereign immunity. Doing so, the Court explained, would "confuse[] the doctrine of sovereign immunity with the requirement that a plaintiff state a cause of action." *Id.* "In a suit against an agency of the sovereign, as in any other suit, it is . . . necessary that the plaintiff claim an invasion of his recognized legal rights . . . . [b]ut, in a suit against an agency of the sovereign, it is *not sufficient* that he make such a claim." *Id.* at 693 (emphasis added); *see also Alabama Rural Fire Ins. Co. v. Naylor*, 530 F.2d 1221, 1226 (5th Cir. 1976) ("In order to plead

successfully that the acts of a government officer exceed his statutory authority a plaintiff must do more than simply allege that the actions of the officer are illegal or unauthorized."); *Locke v. Warren*, --- F. Supp. 3d ---, No. 19-61056-CIV, 2020 WL 2763890, at *3 (S.D. Fla. 2020) (explaining, in common law right of access case, how a plaintiff's "fail[ure] to identify even a single statute that would have directed [the defendant] to release the records he requested" would defeat a claim to meet the *Larson-Dugan* exception).

It is true that the D.C. Circuit in *WLF II* held that the question whether the *Larson-Dugan* exception to sovereign immunity applied in a common law right of access suit against the U.S. Sentencing Commission merged with the merits of the plaintiff's claim.  89 F.3d at 901-02.  But the court's analysis elided the fact that the *Larson-Dugan* exception only applies when an official is alleged to have acted beyond statutory authority or unconstitutionally.  *See also Judicial Watch v. Schiff*, 474 F. Supp. 3d 305, 313-14 (D.D.C. 2020) (following *WLF II*'s holding on the *Larson-Dugan* exception's applicability as binding precedent), *aff'd on other grounds* 998 F.3d 989 (D.C. Cir. 2021).

Because Plaintiff has not identified any waiver of sovereign immunity and cannot avail himself of the *Larson-Dugan* exception to sovereign immunity, subject matter jurisdiction is lacking, and the Complaint should be dismissed.

## II.     PLAINTIFF'S CLAIMS LACK MERIT

Even if the Court concludes that it has jurisdiction over Plaintiff's claims against Defendants Manger and USCP, it should nonetheless enter summary judgment for Defendants. That is because for two of Plaintiff's requests, the requested documents do not exist, and for the remaining request for security camera footage, that material is not a "public record" to which the common law right of access applies—and even if it were, the USCP has strong interests in keeping the material confidential.

**A.      The USCP and OIG do not possess any responsive documents to the requests underlying Plaintiff's second and third causes of action**

On October 22, 2021, Plaintiff's counsel authorized Defendants Manger and USCP to represent to the Court that Plaintiff has agreed to voluntarily dismiss his second and third causes of action.  Solely out of an abundance of caution pending the filing of a formal dismissal notice, Defendants include the following argument with respect to those causes of action.

Both the USCP and OIG have made clear that the documents requested by Plaintiff in his second and third causes of action do not exist.  Joyce Decl. ¶ 4 & Ex. E; Bolton Decl. ¶ 6 & Ex. A.  The USCP has not, as of this filing, "develop[ed] a policy and procedure for sharing information that follows the spirit of the Freedom of Information Act."  House Report at 22; *see* Joyce Decl. ¶ 4.  And OIG has not generated a report listing "which [of OIG's] reports [within the previous 3 years] could have been made public.  House Report at 22; *see* Bolton Decl. ¶ 6.  As a result, even assuming this Court had jurisdiction, there is nothing for Defendants Manger and USCP to produce in response to these requests, and Plaintiff has no right to access a document that does not exist.

In FOIA cases, courts routinely dismiss claims where the requested information does not exist, because "the [defendant] agency is not obligated, nor is it able, to disclose a record it does not have."  *DeBrew v. Atwood*, 792 F.3d 118, 123 (D.C. Cir. 2015); *see also Kissinger v. Reps. Comm. for Freedom of the Press*, 445 U.S. 136, 155 (1980) (an agency's "possession or control of the [requested] documents at the time the requests were received" is an "indispensable prerequisite to liability in a suit under the FOIA").  There is no reason for this Court to treat a claim under the common law right of access any differently.  Nor could Defendants produce anything to Plaintiff, even if ordered to do so.  Defendants are entitled to summary judgment on Plaintiff's second and third causes of action.

**B.      The USCP's security camera footage is not a "public record" and the USCP's confidentiality interests in the footage outweigh any public interest**

Defendants Manger and USCP are also entitled to summary judgment on Plaintiff's first cause of action, regarding his request for "all security camera footage shared by the USCP with the Federal Bureau of Investigation as part of the investigation into the events of 6 January 2021." Compl. ¶ 37.  Video surveillance footage recorded for the purposes of securing the Capitol and detecting misconduct or criminal activity is not a "public record."   Even if it were a "public record," the USCP's interests in maintaining the confidentiality of that footage outweigh the public interest in disclosure.

1.      *The USCP's security camera footage shared with the FBI is not a "public record" to which Plaintiff's asserted common law right of access applies*

To qualify as a "public record" subject to the common law right of access, the D.C. Circuit has explained that the material must be "a government document created and kept for the purpose of memorializing or recording an official action, decision, statement, or other matter of legal significance, broadly conceived."  *WLF II*, 89 F.3d at 905.  In so doing, the court rejected a sweeping definition of a "public record" that would "include almost every document recorded, generated, or produced by public officials whether or not required by law to be made, maintained or kept on file." 89 F.3d at 904 (quoting *Higg-A-Rella, Inc. v. Cnty. of Essex*, 660 A.2d 1163, 1168 (1995) (quotation marks omitted)).   Such a definition, the D.C. Circuit explained, would "impose . . . the most demanding possible disclosure obligation."  *Id.* at 905.  The security footage Plaintiff has requested here does not satisfy the governing test.

The footage is the entirety of the raw security surveillance footage that was recorded as part of the USCP's regular security at the Capitol during the pertinent hours.  Raw surveillance footage by definition does not memorialize or record any official action, but instead simply provides a recording of *everything* that occurs within a camera system's view.  Longstanding

13

USCP policy dictates that the USCP camera system, including footage recorded by it within the Capitol and sought by Plaintiff, is solely for national security and law enforcement purposes. *See* Joyce Decl. ¶ 10 & Ex. G, USCP Directive 1000.002, *Retrieval of Archived Video* (Directive 1000.002). Like many video surveillance systems, the USCP camera system is designed "to provide situational awareness to USCP personnel, supporting national security, and legitimate law enforcement purposes." *See* Directive 1000.002 at 1-2. It is not, and never has been, intended to record some official government action for the purpose of memorializing that action.

As the USCP has explained, to support the government's investigations into the conduct of the individuals and groups which attacked the Capitol on January 6, it has shared the CCV footage from that day with the FBI. Joyce Decl. ¶ 6. That footage is thus part of numerous law enforcement investigations and, in some cases, prosecutions, each at various stages of progress. *Id.* Although the footage has become of significant importance to the government's efforts to detect and prosecute criminal conduct committed on January 6, it was not created "for th[at] purpose," as the governing test for a "public record" requires it to have been. *WLF II*, 89 F.3d at 905. Further, to the extent the footage was specifically preserved, it was not "kept" to memorialize or record some official action or other matter of legal significance. *See id*. Rather, the footage was preserved so that it could be made available to the FBI for its use in criminal investigations. Joyce Decl. ¶ 6.

Moreover, the USCP has tightly controlled access to the requested video footage. It shared the footage with the FBI pursuant to an information sharing agreement, entered into by the USCP and the FBI, which provides that the footage remains the property of and under the legal control

of the USCP, and will be returned to the USCP at the conclusion of the investigation.[4]  Joyce Decl. ¶ 8 & Ex. F.  Such restrictions on dissemination cut against a finding that the requested video footage is a public record.[5]

The USCP is aware of no authority holding that thousands of hours of unedited law enforcement surveillance video footage should be considered a public record subject to mandatory disclosure.  Defendants recognize that this Court has ordered excerpts from the USCP's January 6 surveillance video footage, specific to individual criminal defendants, released to members of the media.  *See, e.g.*, *United States v. Torrens*, No. 1:21-cr-00204-BAH (D.D.C.), ECF No. 83, Mem. Op. and Order (Sep. 15, 2021).  It reached that outcome, however, under the test for whether a given video constituted a "judicial record," because the Court had "view[ed] and rel[ied] upon the video exhibits in accepting defendant's guilty plea" and they "therefore 'affect[ed the] court's decisionmaking process.'"  *Id.* at 10 (quoting *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 667 (D.C. Cir. 2017)).  The USCP understands that prosecutors in other criminal cases related to the January 6 attack have had to provide similar videos depicting individual defendants to media representatives.  *See* Joyce Decl. ¶ 13.  The inquiry in *Torrens*, however, is distinct from the one posed here: whether the *entirety* of the footage from the USCP's CCV system that the USCP shared with the FBI, for its investigation into the January 6 events writ large, is a public record under the D.C. Circuit's public record test.  In contrast to the test for a public record, which

---

[4] More generally, and in the ordinary course, a request for video footage from the USCP's camera system must be submitted through written application by a USCP employee for a specific law enforcement purpose, and be approved by either of two USCP Assistant Police Chiefs.  *See* Joyce Decl. ¶ 10 & Directive 1000.002; *id.*, Ex. H (Form CP-411).  Even when a request for footage is approved, the footage must be viewed within the presence of USCP personnel, or subject to strict control by the USCP.  *See* Joyce Decl. ¶ 11.

[5] In addition to the FBI, the USCP has disclosed portions of the video footage from the Capitol on January 6 to other entities, such as congressional committees, the Washington D.C. Metropolitan Police Department, and federal prosecutors.  Joyce Decl. ¶ 12.  To the extent that there have been any public releases of that footage, it has not been by the USCP.  *Id.* ¶ 14.

is limited to documents created and kept for the purpose of memorializing or recording official action, the test for a judicial record first applies a strong presumption in favor of public access to judicial proceedings, and then looks to the role the document played in the adjudicatory process. Documents and other materials filed in court intended to influence the court are considered judicial records. *See Torrens*, at 5-6 (citing *In re Leopold*, 964 F.3d 1121 (D.C. Cir. 2020)). Given the different tests and the material differences in the footage at issue, the treatment of video excerpts in *Torrens* and other January 6 criminal cases is easily distinguishable from the instant case.

Because the USCP's video footage shared with the FBI is not a "public record," Plaintiff has no common law right of access to that material.

> 2. *Even if it were a "public record," the USCP's interests in the confidentiality of the security camera footage outweigh any asserted public interest*

Assuming *arguendo* that the requested footage were to be deemed a "public record," Plaintiff nonetheless has no right to access it because he cannot show a public interest in disclosure that outweighs USCP's countervailing interests against release. *See Wash. Legal Found. v. U.S. Sentencing Comm'n*, 17 F.3d 1446, 1451-52 (D.C. Cir. 1993) (if a document is a public record, "the court should proceed to balance the government's interest in keeping the document secret against the public's interest in disclosure"). Plaintiff in his Complaint does not allege with any particularity what the public interest in hours of unedited surveillance footage, not tied to any particular criminal defendant or alleged conduct, might be. Instead, Plaintiff relies on a conclusory allegation of a "significant public interest in disclosure of the footage." *See* Compl. ¶ 41. The USCP would of course not deny that there is strong public interest in the events of January 6 generally, but it is "not sufficient for the plaintiffs to show [public] interest in only the general subject area of the request." *ACLU of N. Cal. v. DOJ*, No. C 04-447 PJH, 2005 WL 588354, at *13 (N.D. Cal. Mar. 11, 2005) (FOIA case assessing applicability of Exemption 7(C)). Plaintiff

must instead demonstrate a public interest in the actual requested material that outweighs the need for confidentiality.

Whatever public interest can be derived from Plaintiff's conclusory allegation in the Complaint is outweighed by the USCP's interests in maintaining the confidentiality of the requested security footage. First, that footage has been shared with the FBI for the specific purpose of supporting the FBI's investigations into criminal conduct related to January 6. Disclosing the entirety of the USCP's footage from January 6 to the public could undercut the government's investigations. Joyce Decl. ¶ 15. For example, members of the public could identify in that footage individuals who have not yet been charged, and use that information to frustrate investigative or prosecutorial efforts. *Id.*

Second, disclosure of this footage would reveal the entirety of the USCP's surveillance camera system, including the number of cameras and their locations, view angles, and capabilities. Joyce Decl. ¶ 15. The footage also shows Capitol entry and exit points, and Members' office locations, as well as certain security techniques and methods employed by USCP on January 6. *Id.* ¶¶ 15, 17. Releasing this security blueprint could enable prospective wrongdoers to evade detection in future actions against the Capitol complex. *Id.*; *see also* Directive 1000.002 at 2 ("Retrieving, using, or duplicating archived video footage in cases not related to national security or significant law enforcement operations . . . could expose the location of [USCP's] CCTV cameras or identify [USCP's] surveillance tactics. This presents a threat to national security, as making this information public could be utilized by a potential adversary.").

Third and finally, the Capitol Police Board has designated approximately seventeen hours of the footage requested to be "security information" whose public disclosure is prohibited by federal statute. *See* Joyce Decl. ¶ 17; 2 U.S.C. § 1979. This footage designated as security information depicts sensitive evacuations of Congressional members and the Vice President during

the January 6 attack, including along routes not open to the public, as well as sensitive USCP evacuation and protective techniques.  Joyce Decl. ¶ 17.

## CONCLUSION

For the foregoing reasons, Defendants Manger and USCP's Motion to Dismiss should be granted and Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction.  In the alternative, the Court should enter summary judgment for Defendants Manger and USCP on Plaintiff's first, second, and third causes of action.


Dated:  October 22, 2021                              Respectfully submitted,

                                                      BRIAN M. BOYNTON
                                                      Acting Assistant Attorney General

                                                      MARCIA BERMAN
                                                      Assistant Director
                                                      Federal Programs Branch

                                                      */s/ M. Andrew Zee*
                                                      M. ANDREW ZEE (CA Bar No. 272510)
                                                      Attorney
                                                      United States Department of Justice
                                                      Civil Division, Federal Programs Branch
                                                      450 Golden Gate Ave.
                                                      San Francisco, CA 94102
                                                      Tel: (415) 436-6646
                                                      Fax: (415) 436-6632
                                                      E-mail: m.andrew.zee@usdoj.gov

                                                      *Counsel for Defendants J. Thomas Manger
                                                      and U.S. Capitol Police*